UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Action No. 3: 11-005-DCR |
| Plaintiff/Respondent, | ) | and |
| | ) | Civil Action No. 3: 12-7217-DCR |
| V. | ) | |
| | ) | |
| RAUL ESTRADA-CHAVEZ, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant/Movant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Raul Estrada-Chavez's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Record No. 19] In support, Estrada-Chavez argues that his attorney provided ineffective assistance by failing to seek a two-level reduction to his guideline calculation under an 1995 internal Department of Justice memorandum and by failing to ask the Court to order his departure as a condition of supervised release. The defendant also asserts that he was entitled to a two-level reduction of his offense level under the safety valve provision of the United States Sentencing Guidelines. All three arguments are without merit. As a result, Estrada-Chavez's motion will be denied.

**I.**

Estrada-Chavez is a thirty-three year old Mexican citizen. He has entered the United States illegally on numerous occasions. While in the United States, Estrada-Chavez has used several aliases to hide his actual identity. In 2003, Estrada-Chavez was convicted of possession of narcotic drugs (*i.e.*, 39 grams of cocaine base) for sale in Maricopa County, Arizona. The

-1-

defendant was arrested on this charge on March 11, 2003, following an undercover police operation. When he failed to appear for a court proceeding in the matter, an arrest warrant was issued. Estrada-Chavez was subsequently arrested on another charge of possessing a forged Mexico voter identification card and driver's license. He was later convicted on the drug charge and sentenced to five years probation, 360 hours of community service, and six months in jail. On February 17, 2004, Estrada-Chavez was release to the United States Bureau of Immigration and Customs Enforcement ("ICE") for removal proceedings.

Although he has never been married, Estrada-Chavez has three young children who live with their mother in Phoenix, Arizona. At the time of the preparation of the Presentence Investigation Report ("PSR"), their ages were listed as 11, 8 and 2. One of the children (Valentina) has a heart condition and receives Supplemental Security Income/Disability from the government. Based on the foregoing, it is fair to conclude that the defendant has a history of illegal entry and a strong motivation to continue this conduct in the future unless his actions are judicially deterred. To this point, deterrence efforts have been wholly unsuccessful.

On March 10, 2011, ICE received information from the Shelby County, Kentucky Detention Center that Estrada-Chavez had been arrested by local law enforcement officers for several traffic violations. An ICE agent subsequently interviewed the defendant and processed his fingerprints through the agency's computer system. The computer check confirmed Estrada-Chavez's actual name, his illegal status, and his criminal history. This check also indicated that the defendant had been removed from the United States to Mexico on at least seven prior occasions with the most recent deportation occurring on February 17, 2004. Finally, the

computer check established that Estrada-Chavez had not received permission from authorities to re-enter the United States. The defendant does not contest these facts. And he does not offer any reason to suggest that he will not be deported after he serves the term of incarceration imposed in this case.

Estrada-Chavez appeared before a United States Magistrate Judge on April 15, 2011, and was advised, *inter alia*, of the charge contained in the Indictment. [Record No. 7] At that time, attorney Mark Wohlander was appointed to represent him pursuant to the Criminal Justice Act. The Magistrate Judge set the matter for trial beginning June 21, 2011. However, on June 3, 2011, the defendant, by counsel, moved the Court to be re-arraigned for the purpose of entering a guilty plea without the benefit of a written plea agreement.[1] [Record No. 11] That motion was granted and a hearing was held on June 6, 2011, for the purpose of taking Estrada-Chavez's guilty plea.

During the June 6th hearing, the Court confirmed that the defendant: (i) was competent to proceed; (ii) had received a copy of the indictment and understood the charges against him; (iii) was satisfied with his counsel; (iv) was aware of the potential penalties he faced, including likely deportation following service of any sentence imposed; (v) was aware of the manner in which his guideline range would be calculated and that it would not be binding on the Court; (vi) understood he could continue with a plea of not guilty and proceed to trial; (vii) would surrender

---

[1]    There is no indication by either party that the government offered Estrada-Chavez a written Plea Agreement or that any such proposed agreement contained terms which would have provided the defendant with a deal better than the one he received.

certain rights if he entered a guilty plea and did not proceed to trial by a jury. Finally, the Court confirmed that there was a factual basis for Estrada-Chavez's guilty plea.

Estrada-Chavez's PSR was disclosed to the parties on August 16, 2011, and to the Court on September 2, 2011. Neither the United States nor the defendant objected to the factual information or the guideline calculations contained in the PSR. As a result, these matters were adopted by the Court at the time of the sentencing hearing.

As outlined in paragraphs 11 though 20 of the PSR, Estrada-Chavez's Total Offense Level was calculated as 17. This calculation included a 12-level enhancement to his Base Offense Level because the defendant was previously deported following his conviction for a felony drug trafficking offense. This calculation also included a three-level reduction for acceptance of responsibility. (*See* 2010 United States Sentencing Guideline, §§ 2L1.2(b)(1)(B) and 3E1.1(a) and (b).) Based on his prior convictions, Estrada-Chavez was placed in Criminal History Category II. Thus, his non-binding guideline range for imprisonment was 27 to 33 months of imprisonment while the range for supervised release following imprisonment was calculated to be at least two years but not more than three years.

Prior to the sentencing hearing, Estrada-Chavez's attorney filed a Sentencing Memorandum which included photographs and a translated letter from the mother of the defendant's children. [Record No. 15] The information contained in this memorandum was fully considered by the Court at sentencing under 18 U.S.C. § 3553. However, after considering all relevant factors, including the defendant's history and pattern of illegal entry and his lack of respect for the laws of the United States, the Court determined that a sentence of 38 months'

imprisonment was needed to deter future illegal conduct and provide proper punishment for the defendant's crime. Additionally, as a special condition of supervised release, the Court imposed the following requirement:

> If the defendant is deported, he shall not re-enter the United States without the permission of the U.S. Bureau of Immigration & Customs Enforcement and/or the Attorney General. However, if he would re-enter the United States during the effective term of supervision, he must report to the closest U.S. Probation Office for service of supervision.

[Record No. 18; Judgment, p. 6]

A transcript of the sentencing hearing has not been filed in the record. However, the reasons for the Court's decision to impose a sentence above the defendant's correctly-calculated guideline range of 27 to 33 months is outlined in the Statement of Reasons attached the Judgment entered on September 20, 2011. Because of the defendant's history of disrespecting the laws of the United States by illegally re-entering the country on numerous occasions following his removal, the need to deter this conduct in the future, and the need to protect the public from an individual with a history of engaging in illegal drug transactions, a sentence of 38 months was the least period of incarceration that could be imposed under the circumstances. Nothing less would be sufficient to meet the provisions of 18 U.S.C. § 3553.

## II.

Estrada-Chavez now argues that his attorney, Mark Wolander, provided ineffective assistance by failing to request a two-level reduction from his Adjusted Offense Level pursuant to an April 28, 1995 memorandum of the United States Attorney General. Although it was subsequently revoked and not in effect at the time of the defendant's sentencing hearing, this

memorandum provided, in relevant part, that the prosecuting United States Attorney could seek such a reduction if a defendant had a nonfrivolous basis for opposing deportation but agreed that he or she would not oppose deportation. Next, Estrada-Chavez asserts that Wolander was ineffective for failing to ask the Court to direct that he be deported as a condition of supervised release pursuant to discretionary authority given to the Court under 18 U.S.C. §3583(d). Neither argument provides a basis for relief under 28 U.S.C. § 2255 under the undisputed facts presented here. Likewise, the defendant's safety valve argument is meritless.

When asserting a claim of ineffective assistance of counsel, a movant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d. 959, 964 (6th Cir. 2006) (a movant must prove ineffective assistance of counsel by a preponderance of the evidence). To prove deficient performance, a movant must show that her attorney made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A movant may meet this burden by establishing that his attorney's representation "fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 687-88. Under this test, judicial scrutiny of the attorney's performance is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689. "Deficient performance" is constitutionally prejudicial only when the attorney's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

-6-

To prove prejudice, a movant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. It must also be noted that, when evaluating the issue of prejudice, courts generally take into consideration the "totality of the evidence" presented to the decision maker *Id.* at 695. Where a claim of ineffective assistance follows a guilty plea, the movant must show that a "reasonable probability exists that, but for counsel's errors, [she] would not have pleaded guilty and wound have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In *Missouri v. Frye*, 132 S.Ct. 1399 (2012), the Supreme Court recognized that the right to effective assistance of counsel extends to the plea bargaining process. A defendant may assert a cognizable claim of ineffective assistance of counsel if his attorney fails to inform the defendant of a plea offer provided the defendant is able to demonstrate prejudice. To establish prejudice in such circumstances, the defendant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 1409-10. Likewise, in *Lafler v. Cooper*, 132 S.Ct. 1376 (2012), the Court held that a claim of ineffective assistance can result from incorrect advise given by an attorney in deciding whether to accept or reject a plea offer. Under such circumstances, a defendant must establish that there is a reasonable probability that, but for the erroneous advise, the original plea bargain containing a less severe penalty would have been accepted by the defendant and the court. *Id.* at 1384-85.

### A.   Estrada-Chavez Is Not Entitled To Relief Based On A Former Policy Memorandum Issued By The Attorney General In 1995.

As the United States correctly points out in its response to the defendant's motion, the internal 1995 memorandum cited in support of Estrada-Chavez's first argument was not and is not binding authority. [Record No. 29] However, the basis for the policy was severely undermined by Congress in 1996 when it amended the Immigration and Nationality Act to provide for administrative reinstatement of prior deportation, exclusion and removal orders. *See* Illegal Immigration Reform and Immigrant Responsibility Act ("IIRAIRA"), Pub. L. No. 104-208, 110 Stat. 1570, 1701-1703 (1996). Through IIRAIRA, the earlier process of deportation was steamlined regarding non-resident aliens convicted of aggravated felonies. As the Attorney General noted in a memorandum issued in 1999[2], the statutory changes brought about through IIRAIRA "substantially reduced the benefit the Government derives solely from an alien's concession of alienage and stipulation to removal from the United States." The 1999 memorandum provided the following additional guidance:

> [I]n *United States v. Clase-Espinal*, 115 F.3d 1054 (1st Cir.), *cert denied*, 522 U.S. 957 (1997), the Court of Appeals for the First Circuit held an alien's stipulation of alienage and waiver of deportability in a plea agreement do not in themselves justify downward departure, at least in the absence of a non-frivolous defense to deportation. In light of these recent developments, the Department is evaluating whether the policy set forth in the April 28, 1995, memorandum remains appropriate. *In the interim, prosecutors should not enter into agreements providing for a recommendation of a downward departure unless the Government receives an articulable benefit not contemplated by the Sentencing Guidelines.*

(Emphasis added.) Thus, at the time Estrada-Chavez was sentenced in November 2011, the 1995 guidance memorandum was no longer effective. However, as discussed more fully below, even

---

[2] The subject of the April 28, 1995 memorandum is entitled, "Deportation of Criminal Aliens". It appears at http://www.justice.gov/ag/readingroom /deportation95.htm. The 1999 memorandum is available at: http://www.justice.gov//usao/eousa/ foia_reading_room/usam/title9/crm01999.htm.

if the 1995 memorandum (or some other similar memorandum) was still in effect, it would not provide a legal basis for the two-level reduction sought by the defendant. Simply put, the United States Attorney General may not unilaterally alter the United States Sentencing Guidelines through the issuance of internal memoranda to United States Attorneys and their assistants.

The United States Sentencing Guidelines provide a number of reasons under which a party may seek a reduction of an offense level calculation. In Section 5K2.0, the United States Sentencing Commission provided a catch-all provision for circumstances not adequately taken into consideration by other sections of the guidelines. Thus, to fit within the guideline calculus, the basis outlined in the Attorney General's 1995 memorandum would need to satisfy the requirements of this section. However, it did not.

In *United States v. Clase-Espinal*, 115 F.3d 1054, 1056-58, the First Circuit found that the 1995 memorandum was not entitled to any weight in correctly calculating a defendant's guideline range. The court noted that, *"the Attorney General's willingness, in certain circumstances, to agree to such a downward departure [was] in the form of a shadow sentencing guideline, unauthorized by relevant law . . .* and not entitled to any particular weight. *Id*. at 1056 (emphasis in original). Further, to warrant a departure under Section 5K2.0, the defendant must have a nonfrivolous basis for opposing deportation in the first place. *Id.* at 1058. In the present case, Estrada-Chavez has neither alleged nor offered any evidence that, at the time of sentencing, he had any legitimate reason to contest deportation following service of his term of incarceration. Likewise, he has not presented any proof that the United States would have received any articulable benefit by seeking a two-level reduction of the defendant's offense level.

Other courts are in general agreement with the First Circuit's holding in *Clase-Espinal, id*. For example, in *United States v. Marin-Castaneda*, 134 F.3d 551, 555-56 (3rd Cir. 1998), the Third Circuit held that the district court did not have the authority to offer a downward departure to an alien defendant based on his willingness to consent to deportation unless the United States Attorney had recommended it. It noted that, an alien with no plausible basis for contesting deportation does not meet the atypicality requirement necessary to obtain a departure motion under USSG, § 5K2.0. *Id.* at 555. And in *United States v. Flores-Uribe*, 106 F.3d 1485, 1487-88 (9th Cir. 1997), the Ninth Circuit found that a defendant's "Stipulation to Deport" had no practical or legal effect because the district court did not have a basis to depart from the otherwise applicable guideline range under Section 5K2.0. Likewise, the district court did not have authority to issue a deportation order, absent a request for such an order from the United States Attorney. *See also, Pimental v. United States*, 981 F.Supp. 697, 699 (D. Mass. 1997) (denying a defendant's claim of ineffective assistance of counsel based on an assertion that his attorney failed to advise him of a possible two-level departure in connection with an agreement to waive his right to contest deportation because the district court lacked the power to implement an agreement to that effect).

The Supreme Court's recent holdings in *Missouri v. Frye*, 132 S.Ct. 1399 (2012), and *Lafler v. Cooper*, 132 S.Ct. 1376 (2012), are also significant because they reinforce the general rule that, to prevail, a defendant seeking relief based on a claim of ineffective assistance of counsel must demonstrate that his or her attorney provided erroneous advise *and there is a reasonable probability that, but for the erroneous advise, the outcome would have been different*.

Under the facts of this case, there is no reason to believe that the defendant had any basis to argue for a better deal. His identity was certain and he had no legal justification to be in the United States. Estrada-Chavez has not offered any nonfrivolous reason to contest deportation following service of his sentence. Thus, there was no reason – factually or legally – for the United States to seek a two-level reduction of his offense level calculation. And even if the parties had sought the reduction now urged by the defendant, the Court would not have granted it. To do so would violate the United States Sentencing Guidelines, Section 5K2.0, and be unwarranted under the circumstances. Rather than a downward reduction from the guideline range calculated by the United States Probation Office, it was necessary to impose an *upward variance* under 18 U.S.C. § 3553 to provide deterrence to the defendant and protection to the public.

In summary, the defendant's first argument fails because: (1) the 1995 memorandum was not in effect at the time of Estrada-Chavez's sentencing hearing; (2) the 1995 memorandum does not meet the requirements of Section 5K.2.0 of the United States Sentencing Guidelines in effect at the time of the sentencing hearing; (3) the defendant has not argued or offered any evidence that the United States would receive an articulable benefit in exchange for making a motion to reduce his offense level by two levels in exchange for a stipulation of deportation; (4) the defendant has offered no proof that he had a nonfrivolous basis to contest deportation; and (5) this Court would not have granted a motion to reduce the defendant's offense level under Section 5K2.0 or the 1995 memorandum even if a request or motion had been made by either party.

### B.  The Discretionary Provisions Of 18 U.S.C. §3583(d) Do Not Provide A Basis For Habeas Relief Under 28 U.S.C. § 2255.

Title 18 of the United States Code, Section 3583(d), contains both mandatory and discretionary conditions for individuals subject to supervised release following service of a period of incarceration.  In this case, the defendant was placed on supervised release for a period of two years which will commence after he completes his 38-month term of incarceration.  As noted above, the Court chose to impose the following special condition during the period of the defendant's supervision:

> If the defendant is deported, he shall not re-enter the United States without the permission of the U.S. Bureau of Immigration & Customs Enforcement and/or the Attorney General.  However, if he would re-enter the United States during the effective term of supervision, he must report to the closest U.S. Probation Office for service of supervision.

[Record No. 18; Judgment, p. 4]  If the United States deports Estrada-Chavez during his two-year period of supervised release, he will still be subject to the special condition imposed by the Court.  And if he violates this provision, he could receive an additional period of incarceration of up to two years, and reimposition of supervised release for up to three years.

It is correct that 18 U.S.C. § 3583(d) gives district courts authority to order a defendant who is in the United States illegally to be deported as a condition of supervised release.  The specific language of the statute provides: "[i]f an alien defendant is subject to deportation, the court may provide as a condition of supervised release, that he be deported and remain outside the United States, and may order that he be delivered to a duly authorized immigration official for such deportation."  18 U.S.C. § 3583(d).  The defendant does not explain why the Court should have imposed this condition or why his counsel erred in failing to request it.  However,

the fact that Estrada-Chavez will be subject to deportation following service of his sentence is not seriously contested.

Further, the defendant would not have received any benefit if the Court had altered the condition actually imposed and directed his deportation as a condition of supervised release. Under the special condition imposed, if the defendant is deported and returns illegally, he will face a separate penalty for violating a condition of supervised release. And if the Court had imposed the condition sought by Estrada-Chavez and he returned illegally during the two-year period of supervised release, he would face the same potential penalty for his violation of supervision. In short, the defendant's situation would be the same if the Court had directed deportation rather than allow the Department of Justice to remove him as part of the department's normal procedures.

It is also important to note that, even if the defendant had requested a direction for deportation as part of his sentence, the modification would not have shortened his period of incarceration. Further, the Court would not have been inclined to grant the request, but would have imposed the special condition which was actually imposed in the case. With respect to this issue, no prejudice has been alleged or shown by Estrada-Chavez. Thus, he is not entitled to habeas relief because his attorney did not request deportation as a special condition of supervised release.

### C. The Safety-Valve Provisions Of the United States Sentencing Guidelines Are Inapplicable In This Case.

Finally, the defendant asserts at page 12 of his motion that his counsel was ineffective for failing to seek a two-level reduction under the safety valve of the United States Sentencing

Guidelines. This argument lacks merit for two primary reasons. First, under Section 5C1.2 of the guidelines, the reduction is available for convictions under 21 U.S.C. §§ 841, 844, 846, 960, or 963. It is not available for immigration offenses charged under 8 U.S.C. § 1326. *See* USSG § 5C1.2(a). Second, the section does not apply to defendants who have more than one criminal history point. *See* USSG § 5C1.2(a)(1). As outlined in his PSR, Estrada-Chavez has three criminal history points.

### III.

The defendant has not shown that his attorney provided ineffective assistance in any way. At sentencing, this Court imposed a term of incarceration of thirty-eight months. Based on Estrada-Chavez history and characteristics (which included a felony drug conviction and numerous illegal entries into the United States), the need to protect the public, and the need to specifically deter future criminal conduct by this defendant, the Court determined that a minimum period of incarceration of thirty-eight months was sufficient, but not greater than necessary to meet the statutory provisions of 18 U.S.C. § 3553. The Court's analysis and ultimate sentence would not have changed even if the parties urged a lower guideline calculation based on the 1995 internal guidance memorandum which was not in effect within the Department of Justice at the time of the defendant's sentencing.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. Defendant/Movant Raul Estrada-Chavez's motion to vacate, set aside, or correct the judgment previously entered in Criminal Action No. 3: 11-005-DCR [Record No. 19] is **DENIED**.

2. Civil Action No. 3: 12-7217-DCR is **DISMISSED**, with prejudice, and **STRICKEN** from the Court's docket.

3. A separate, final and appealable Judgment shall be entered in the habeas action on this date.

This 18th day of October, 2012.

Signed By:
*Danny C. Reeves* DCR
United States District Judge